NO. _____

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| HIRSCHFELD STEEL CO., INC., | § § § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR WRIT OF SEQUESTRATION

Plaintiff St. Paul Fire and Marine Insurance Company (the "Surety"), complains of Defendant Hirschfeld Steel Co., Inc. ("Defendant") and respectfully states:

### Summary

The Surety entered into an agreement with the Defendant for certain specially fabricated material. The Surety paid for the material, which has already been fabricated, and is being stored by Defendant. However, despite the fact that the material has been paid for in full and is now needed on the construction project for which it was ordered, Defendant has refused to deliver it or agree to deliver it. This material will be scrap unless it is used on the project for which it was ordered. Further, the Surety faces the loss of incentives and liquidated damages of $15,000 a day for delays to the project. Accordingly, the Surety requests that the Court issue a writ of sequestration.

### Discovery

1.     Pursuant to Texas Rule of Civil Procedure 190.1, the Surety intends to conduct discovery under Level 2.

*Plaintiff's Original Petition and Application for Writ of Sequestration - Page 1*

### Parties

2.      Plaintiff St. Paul Fire and Marine Insurance Company is a corporation that is duly authorized to do business in the State of Texas.

3.      Defendant Hirschfeld Steel is a Nevada corporation which may be served with process by service of citation on its registered agent, David L. Hirschfeld, at 112 West 29th, San Angelo, Texas 76901.

### Jurisdiction and Venue

4.      This Court has jurisdiction over Defendant because it does business in the State of Texas. Venue is proper in Harris County, Texas because all or a substantial part of the events giving rise to this lawsuit took place in Harris County and the project at issue is located in Harris County. TEX. CIV. PRAC. & REM. CODE § 15.002(a).

### Factual Background

5.      Contractor Technology, Ltd. ("CTL") and the Texas Department of Transportation ("TXDOT") entered into a contract on August 5, 2004 for CTL to furnish all labor and material and perform all work for Project NH 2004(76) being Contract No. 04043001 for the Construction of 5.507 kilometers  of NASA Road 1 in Harris County, Texas (the "Project").

6.      The Surety issued payment and performance bonds numbered TA6483 (the "Bonds") on behalf of CTL for the Project on or about August 21, 2004 in the penal sum of $40,667,675.

7.      TXDOT declared CTL in default in the performance of its contract and terminated CTL's right to proceed on July 11, 2005.  TXDOT then called upon the Surety to fulfill its obligations as surety under the terms of the Bonds.

8.      Pursuant to its obligations under the Bonds, the Surety entered into a Takeover Agreement with the Texas Department of Transportation on February 28, 2006 for the completion of the Project.

9.      In addition to hiring a completion contractor (Texas Sterling Construction, LLP, hereafter "Texas Sterling") to complete the Project pursuant to the Takeover Agreement, the Surety entered into Ratification Agreements with certain of CTL's prior subcontractors and material suppliers. Under these agreements, the Surety agreed to pay the subcontractor or material supplier the amount it would have received from CTL for work performed or material delivered to the Project. The Surety entered into such a Ratification Agreement with Hirschfeld Steel on February 24, 2006.

10.     Pursuant to the Ratification Agreement, Hirschfeld "agree[d] to deliver its remaining materials to the Project without any delays or disruptions, pursuant to an amended delivery schedule agreed to between [Hirschfeld] and St. Paul or its assignee."

11.     The Surety has paid Hirschfeld all amounts in the Ratification Agreement. The check for that payment was endorsed by Hirschfeld and cleared the banking system on or about March 7, 2006. This payment covers both the steel that has already been delivered and the steel that has yet to be delivered.

12.     The total material that was to be delivered by Hirschfeld to the Project consists of 767,067 pounds of steel in the form of eight (8) steel girders. Two (2) of the steel girders covered by this Purchase Order and the Ratification Agreement (and paid for by the Surety) have yet to be delivered by Hirschfeld.

13.     The two (2) remaining steel girders at issue have been fabricated and are being stored by Hirschfeld pursuant to the Ratification Agreement, which contains an express provision for storage and, in fact, alots $25,000 of the amount paid by the Surety for storage.

14.     Texas Sterling, the completion contractor for the Project working for the Surety, has indicated to the Surety that the two girders remaining will be needed for the Project within the next two weeks and are critical to continue with the construction schedule for the Project.

15.     The Surety has been told by Hirschfeld that, although the steel girders at issue have been fabricated and are in Hirschfeld's possession, Hirschfeld is refusing to deliver the girders.

16.     The Surety caused its counsel to send a letter to Hirschfeld demanding that the girders be delivered pursuant to the terms of the Ratification Agreement. Despite this demand, Hirschfeld continues to refuse to turn over or deliver the steel girders or otherwise comply with the Ratification Agreement.

17.     Pursuant to the Takeover Agreement between the Surety and TXDOT, each day of delay can cost the Surety $15,000 a day in incentives for early completion. The Takeover Agreement also provides for liquidated damages in the amount of $15,000 per day if the Project is not completed on schedule or if specific milestones are not achieved. Delays caused by Hirschfeld's refusal to turn over the steel thus are likely to cost the Surety $15,000 a day.

18.     The Surety has been informed by TXDOT that the girders for this Project under the Ratification Agreement are different than those used on TXDOT's other projects. Therefore, the Surety understands that the girders being retained by Hirschfeld will otherwise be scrap if they are not used for the Project. As a result, the Surety will be greatly harmed if sequestration is not granted.

19.     The fair market value of the material to be sequestered is approximately $300,000. If the material at issue is not used on the Project, its value is reduced to approximately $12,750.

20.     The Surety seeks possession of the girders and upon information believes it to be found at 112 West 29th Street, San Angelo, Texas 76903, which is in Tom Green County.

21.     If the Surety is not granted immediate possession of the girders at issue, it will have to contract with another entity to fabricate and deliver the replacement girders. The Surety expects the additional fabrication costs to exceed $350,000, but this cost is fluctuating and could be much greater. Further, the Surety has been advised that the fabrication of new girders will take at least a few months and could take up to six months, which could significantly delay the completion of the Project and result in loss of incentives and liquidated damages to the Surety.

22.     The Surety fears that there is an immediate danger that Hirschfeld will conceal, dispose of, ill-treat, waste, or destroy the Collateral or remove it from the county, and accordingly, seeks a writ of sequestration from the Court. The specific reasons for this fear are as follows:

a.      Hirschfeld has failed and refused to honor its obligations under the Ratification Agreement.

b.      Hirschfeld has refused to surrender possession of the girders despite having been paid by the Surety, and despite the Surety having demanded that Hirschfeld do so.

c.      The Surety's representatives have had conversations with representatives of Hirschfeld, but Hirschfeld still refuses to surrender possession of the girders.

### Count One

### Application for Issuance of Writ of Sequestration

23.     The Surety realleges the specific averments contained in paragraphs 1 through 22 and incorporate same herein.

24.     Pursuant to Rule 696 of the Texas Rules of Civil Procedure and § 62.001(1) of the Texas Civil Practice & Remedies Code, the Surety hereby applies to the Court for the issuance of a writ of sequestration on the grounds that this suit against the Defendant is for possession of

personal property, and a reasonable conclusion may be drawn that there is immediate danger that the Defendant will conceal, dispose of, ill-treat, waste, or destroy the material at issue, or remove it from the county during this suit.

25.     Upon information and belief, the material at issue may be found at the business address of the Defendant, located at 112 West 29th Street, San Angelo, Texas 76903, which is in Tom Green County.

26.     The Surety fears that there is an immediate danger that the Defendant will conceal, dispose of, ill-treat, waste, or destroy the material at issue, or remove it from the county during this suit.  This fear is based in part on the consistent refusal of the Defendant to surrender possession and/or control of the material to the Surety when specifically and rightfully demanded by the Surety to do so.  The refusal of the Defendant to surrender the material constitutes an intentional concealment of the material and jeopardizes the value of the material and the security and ownership interests of the Surety in the material.  This fear is further based upon facts set forth more fully in the Affidavit of Thomas J. Roberts.

### Count Two

### Breach of Contract

27.     The Surety alleges the specific averments contained in paragraphs 1 through 26 and incorporates same herein.

28.     The Surety performed its part of the Ratification Agreement by paying for all the material in the Purchase Order, including the steel girders at issue.

29.     Defendant breached the Ratification Agreement by failing to deliver or agree to deliver the material.

30.     As a result of the defaults, Defendant is presently liable to the Surety in the amount of the value of the material for which the Surety has paid but not received, plus the additional expenses and losses incurred by the Surety as a result of Defendant's failure to deliver the material as promised.

31.     All conditions precedent to the recovery of the Surety against Defendant under the Ratification Agreement have occurred or been performed.

32.     As a result of the defaults of Defendant, the Surety is entitled to immediate possession of the material pursuant to the terms of the Ratification Agreement and §62.001(1) of the Texas Civil Practice and Remedies Code.

### Count Three

### Conversion

33.     The Surety realleges the specific averments contained in paragraphs 1 through 32 and incorporates same herein.

34.     By reason of the Ratification Agreement, the Surety had and has rights in the material superior to Defendant (the "Converted Property").

35.     Defendant was and is aware of the superior rights of the Surety, yet has wrongfully exercised dominion and control over the Converted Property to the exclusion of, or inconsistent with, the rights of the Surety to that property. Defendant has also refused the demands of the Surety for return of the Converted Property. Additionally, the retention of the Converted Property in violation of the superior rights of the Surety to the Converted Property is a clear repudiation of the rights of the Surety to the Converted Property and is tantamount to a refusal after demand.

36.     Defendant acted willfully and/or was grossly negligent.

37.    Defendant is liable to the Surety for conversion of the Converted Property.  As a result of the  conversion by Defendant, the Surety has sustained damages in an amount in excess of the amount paid by the Surety for the material.

### Count Four

### Specific Performance

38.    The Surety alleges the specific averments contained in paragraphs 1 through 37 and incorporates same herein.

39.    As these steel girders are particular to the Project, the Surety has paid for them in full, and the Surety is entitled to possession of them, the Surety requests that the Court compel the Defendant to immediately turn over possession of the steel girders to the Surety and comply with its obligations under the Ratification Agreement.

### Count Five

### Attorneys' Fees

40.    The Surety realleges the specific averments contained in paragraphs 1 through 39 and incorporate same herein.

41.    The defaults of the Defendant and the refusal of the Defendant to surrender possession of the material when rightfully demanded to do so have forced the Surety to retain the undersigned attorneys, and the Defendant is liable under the terms of the Ratification Agreement to pay for all costs and expenses, including reasonable attorneys' fees, incurred by the Surety in exercising its rights and remedies under the Ratification Agreement and applicable state law.

42.    Additionally, and alternatively, the Surety is entitled to recover its reasonable attorneys' fees under §38.001 *et seq.* of the Texas Civil Practice and Remedies Code.

*Request for Relief*

Plaintiff St. Paul Fire and Marine Insurance Company respectfully requests that:

(1)     The Defendant be cited to appear and answer herein;

(2)     The Court issue a writ of sequestration for the material;

(3)     The Surety be granted possession of the material;

(4)     The Surety be granted judgment against the Defendants, together with pre-judgment and post-judgment interest;

(5)     The Surety be granted judgment for all costs of court and for reasonable attorneys' fees; and

(6)     The Surety be granted such other and further relief to which it may be justly entitled.


Respectfully submitted,

**GODWIN PAPPAS LANGLEY RONQUILLO, LLP**


By: _____
James W. Hamel
State Bar No. 9001826

Renaissance Tower
1201 Elm, Suite 1700
Dallas, Texas 75270-2041
214.939.4400
214.760.7332   Facsimile

ATTORNEYS FOR ST. PAUL FIRE AND MARINE INSURANCE COMPANY

NO. _____

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE<br>INSURANCE COMPANY, | §<br>§<br>§ | IN THE DISTRICT COURT OF |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | HARRIS COUNTY, TEXAS |
| HIRSCHFELD STEEL CO., INC., | §<br>§<br>§ | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## SEQUESTRATION ORDER

Came on to be heard the Application for Issuance of Writ of Sequestration filed by St. Paul

Fire and Marine Insurance Company (the "Surety") in this cause.  The Surety appeared by and

through counsel of record and the hearing was held *ex parte*.  After considering the pleadings and

other papers on file with the Court, the evidence presented, and the argument of the Surety's Counsel,

the Court finds and concludes that the Surety is entitled to a Writ of Sequestration as requested for

the reason that the Surety's suit is for possession of the two (2) steel girders (the "Materials") that are

the subject of the Ratification Agreement and the Purchase Order at issue, and there is an immediate

danger that Hirschfeld Steel Co., Inc. ("Defendant") will conceal, dispose of, ill-treat, waste, or

destroy the Materials, or remove the material from the county during this suit.  The Court finds that

this danger exists because the Defendant has failed to respond to the Surety's communication

attempts or to surrender the Materials to the Surety when specifically and rightfully demanded by

the Surety to do so.  The Court further finds that the Materials have an approximate fair market value

of $300,000, and that the Materials may be found at the business address of Hirschfeld Steel Co., Inc.

at 112 West 29th Street, San Angelo, Texas 76903.  It is therefore

ORDERED that the Clerk shall issue a Writ of Sequestration which commands the Sheriff or Constable of any county in the State of Texas to forthwith take into his possession the above-described property, if they are found in his county, and keep the same subject to further order of this Court, unless same is replevied according to the provisions of the law and the Texas Rules of Civil Procedure. It is further

ORDERED that this Order shall not be effective until and unless the Surety executes and files with the Clerk a sequestration bond, in conformity with the law, in the amount of $_____. It is further

ORDERED that the Defendants, in order to replevy the Materials, shall file with the officer who levied the Writ a bond, in conformity with the law, in the amount of $_____. It is further

ORDERED that if the Defendants fail to post the required bond and reply the Materials within ten (10) days after the levy of the Writ and service of notice upon the Defendants, the Sheriff or Constable shall turn over possession of the Materials to the Surety without further order of the Court, whereupon the Surety may immediately proceed to take possession of the Materials pursuant to the terms of the Ratification Agreement and §62.001 of the Texas Civil Practice and Remedies Code. It is further

ORDERED that the Defendants are to surrender the Materials to the Sheriff or Constable, and that if the Materials are not located at the address listed above, then the Defendants are hereby ordered to disclose to the Sheriff or Constable the exact whereabouts of the Materials or to immediately obtain possession of the Materials and deliver said Materials to the Sheriff or Constable. If the Defendants fail to surrender the Materials or to disclose the exact whereabouts of the Materials to the Sheriff or the Constable, then the Court will set a hearing at which the Defendants will be

required to appear and show cause why failure to comply with this Court's order should not be punished by contempt.  It is further

ORDERED that the Defendants shall not take any action that would diminish, or would tend to diminish, the value of the Materials in any way, including but not limited to any action to remove, conceal, harm, or destroy the Materials or any of its parts and components.  It is further

ORDERED that the Sheriff or Constable may use such force as is reasonably necessary to effectuate the execution of the Writ of Sequestration and the recovery of the Materials.

SIGNED this _____ day of August, 2006.


_____
JUDGE PRESIDING


D1308992v1\11723.0086 PLEADINGS

NO. _____

| | |
|---|---|
| ST. PAUL FIRE AND MARINE | §    IN THE DISTRICT COURT OF |
| INSURANCE COMPANY, | § |
| | § |
|       Plaintiff, | § |
| | § |
| v. | §    HARRIS COUNTY, TEXAS |
| | § |
| HIRSCHFELD STEEL CO., INC., | § |
| | § |
|       Defendant. | §    _____ JUDICIAL DISTRICT |

## AFFIDAVIT OF THOMAS J. ROBERTS

| | |
|---|---|
| STATE OF PENNSYLVANIA | § |
| | § |
| COUNTY OF PHILADELPHIA | § |

I, Thomas J. Roberts, being duly sworn, depose and say:

1.    I am a Bond Claim Counsel for The St. Paul Companies, Inc., which owns St. Paul Fire and Marine Insurance Company (the "Surety"). I am over the age of 21 and am competent and authorized to make this Affidavit. The facts stated herein are true and correct and within my personal knowledge.

2.    In my position as Bond Claim Counsel, I have become experienced in dealing with claims filed under performance and payment bonds and with the indemnity agreement executed pursuant to such bonds in the State of Texas. I am familiar with the facts and circumstances relating to Hirschfeld Steel.

3.    Additionally, as part of my duties for the Surety, I am custodian of certain business records and documents. The exhibits attached hereto are all the true and correct copies of originals in the possession of the Surety. They are kept in the ordinary and regular course of the business activities of the Surety by an employee or agent of the Surety with personal knowledge of the acts,

_____

**Affidavit of Thomas J. Roberts - Page 1**

events, and conditions recorded therein, and were made at or near the time of these events. They are also kept in the regular practice of the Surety concerning such business activities.

4.      Contractor Technology, Ltd. ("CTL") was a general contractor on several construction projects in the State of Texas. CTL and the Texas Department of Transportation ("TXDOT") entered into a contract on August 5, 2004 for CTL to furnish all labor and material and perform all work for Project NH 2004(76) being Contract No. 04043001 for the Construction of 5.507 kilometers of NASA Road 1 in Harris County, Texas (the "Project").

5.      The Surety is a commercial surety that issued payment bonds and performance bonds on behalf of CTL on several projects. The Surety issued payment and performance bonds numbered TA6483 (the "Bonds") on behalf of CTL for the Project on or about August 21, 2004 in the penal sum of $40,667,675.

6.      TXDOT declared CTL in default in the performance of its contract and terminated CTL's right to proceed on July 11, 2005. TXDOT then called upon the Surety to fulfill its obligations as surety under the terms of the Bonds.

7.      Pursuant to its obligations under the several bonds it had issued on behalf of CTL, including the Bonds, the Surety made arrangements for the completion of several of CTL's construction projects. With respect to the Project, the Surety entered into a Takeover Agreement with TXDOT on February 28, 2006. A true and correct copy of the Takeover Agreement on the Project is attached hereto as Exhibit "A" and incorporated herein by reference in its entirety.

8.      In addition to hiring a completion contractor (Texas Sterling Construction, LLP, hereafter "Texas Sterling") to complete the Project pursuant to the Takeover Agreement, the Surety entered into Ratification Agreements with certain of CTL's prior subcontractors and material suppliers. Under these agreements, the Surety agreed to pay the subcontractor or material supplier

the amount it would have received from CTL for work performed or material delivered to the Project. The Surety entered into such a Ratification Agreement with Hirschfeld Steel Co., Inc. ("Hirschfeld") on February 24, 2006. A true and correct copy of the Ratification Agreement between and the Surety is attached hereto as Exhibit "B" and incorporated herein by reference in its entirety.

9.     Pursuant to the Ratification Agreement, Hirschfeld "agree[d] to deliver its remaining materials to the Project without any delays or disruptions, pursuant to an amended delivery schedule agreed to between [Hirschfeld] and St. Paul or its assignee."

10.     The Surety has paid Hirschfeld all amounts in the Ratification Agreement. A true and correct copy of the check from the Surety to Hirschfeld for payment of all amounts due under the Ratification Agreement is attached hereto as Exhibit "C" and incorporated herein by reference in its entirety. The check for that payment was endorsed by Hirschfeld and cleared the banking system on or about March 7, 2006. This payment covers both the steel that has already been delivered and the steel that has yet to be delivered.

11.     The total material that was to be delivered by Hirschfeld to the Project consists of 767,067 pounds of steel in the form of eight (8) steel girders. A true and correct copy of the Purchase Order from Hirschfeld to CTL is attached hereto as Exhibit "D" and incorporated herein by reference in its entirety. Two (2) of the steel girders covered by this Purchase Order and the Ratification Agreement (and paid for by the Surety) have yet to be delivered by Hirschfeld.

12.     The two (2) remaining steel girders have been fabricated and are being stored by Hirschfeld pursuant to the Ratification Agreement, which contains an express provision for storage and, in fact, alots $25,000 of the amount paid by the Surety for storage.

---

**Affidavit of Thomas J. Roberts - Page 3**

13.     Texas Sterling, the completion contractor for the Project working for the Surety, has indicated to the Surety that the two girders remaining will be needed for the Project within the next two weeks and are critical to continue with the construction schedule for the Project.

14.     The Surety has been told by Hirschfeld that, although the steel girders at issue have been fabricated and are in Hirschfeld's possession, Hirschfeld is refusing to deliver the girders.

15.     The Surety caused its counsel to send a letter to Hirschfeld demanding that the girders be delivered pursuant to the terms of the Ratification Agreement. A true and correct copy of the letter from James W. Hamel on behalf of the Surety to Hirschfeld dated August 1, 2006 is attached hereto as Exhibit "E" and incorporated herein by reference in its entirety. Despite this demand, Hirschfeld continues to refuse to turn over or deliver the steel girders or otherwise comply with the Ratification Agreement.

16.     Pursuant to the Takeover Agreement between the Surety and TXDOT, each day of delay can cost the Surety $15,000 a day in incentives for early completion. The Takeover Agreement also provides for liquidated damages in the amount of $15,000 per day if the Project is not completed on schedule or if specific milestones are not achieved. Delays caused by Hirschfeld's refusal to turn over the steel thus are likely to cost the Surety $15,000 a day.

17.     The Surety has been informed by TXDOT that the girders for this Project under the Ratification Agreement are different than those used on TXDOT's other projects. Therefore, the Surety understands that the girders being retained by Hirschfeld will otherwise be scrap if they are not used for the Project. As a result, the Surety will be greatly harmed if sequestration is not granted.

18.     The fair market value of the material to be sequestered is approximately $300,000. This amount is based on the amount the Surety actually paid for this material under the Ratification Agreement. If the material at issue is not used on the Project, its value is reduced to $.06 a pound

**Affidavit of Thomas J. Roberts - Page 4**

(scrap value). At approximately 212,000 pounds, the value of the remaining girders is reduced to approximately $12,750.

19.     The Surety seeks possession of the girders and upon information believes it to be found at 112 West 29th Street, San Angelo, Texas 76903, which is in Tom Green County.

20.     If the Surety is not granted immediate possession of the girders at issue, it will have to contract with another entity (most likely Trinity Industries in Houston) to fabricate and deliver the replacement girders. The Surety expects the additional fabrication costs to exceed $350,000, but this cost is fluctuating and could be much greater. Further, the Surety has been advised that the fabrication of new girders will take at least a few months and could take up to six months, which could significantly delay the completion of the Project and result in loss of incentives and liquidated damages to the Surety.

21.     The Surety fears that there is an immediate danger that Hirschfeld will conceal, dispose of, ill-treat, waste, or destroy the Collateral or remove it from the county, and accordingly, seeks a writ of sequestration from the Court. The specific reasons for this fear are as follows:

a.     Hirschfeld has failed and refused to honor its obligations under the Ratification Agreement.

b.     Hirschfeld has refused to surrender possession of the girders despite having been paid by the Surety, and despite the Surety having demanded that Hirschfeld do so.

c.     The Surety's representatives have had conversations with representatives of Hirschfeld, but Hirschfeld still refuses to surrender possession of the girders.

---

**Affidavit of Thomas J. Roberts - Page 5**

FURTHER AFFIANT SAYETH NOT.

THOMAS J. ROBERTS

SUBSCRIBED AND SWORN TO BEFORE ME on this ___8th___ day of August 2006, to certify which witness my hand and seal of office.

Notary Public, State of Pennsylvania

GAIL M. OSBORN
Printed Name of Notary Public

[Seal]

NOTARIAL SEAL
GAIL M. OSBORN Notary Public
City of Philadelpha, Phila County
My Commission Expires November 25, 2006

My Commission Expires:_____

D1308057v1\11723.0086 PLEADINGS

**Affidavit of Thomas J. Roberts - Page 6**

JUL-17-2006  13:07                                                     P.02/08

RECEIVED
CONSTRUCTION DIVISION

2006 FEB 28 PM 3:03

RECEIVED

2006 FEB 28 PM 3:05

BOP OFFICE

# TAKEOVER AGREEMENT

**County: Harris**
**District: 12**
**Project: NH 2004(76)**
**CSJ: 0981-01-086**
**Highway: NASA Road 1**

This Takeover Agreement (the "Agreement") is made and entered into this 28th day of February 2006, by and between St. Paul Fire and Marine Insurance Company (the "Surety") and the Texas Department of Transportation (the "Owner.")

## RECITALS:

WHEREAS, on or about August 5, 2004 Contractor Technology, LTD. (the "Former Contractor") and the Owner entered into a contract (the "Original Contract") for the Former Contractor to furnish all labor and material and perform all work for Project NH 2004(76) being Contract No. 04043001 for the Construction of 5.507 kilometers of NASA Road 1 in Harris County, Texas (the "Project") in accordance with the terms and provisions of the Original Contract, including all contract documents forming a part of the Original Contract; and

WHEREAS, on or about July 21, 2004 as required by law and under the terms of the Original Contract, the Former Contractor and the Surety made, executed, and delivered to the Owner a performance bond and a payment bond, Bond No. TA6483 (collectively, the "Bonds"), both in the penal sum of $40,667,675.35; and

WHEREAS, on or about July 11, 2005 Owner declared the Former Contractor in default in the performance of the Original Contract and terminated the Former Contractor's right to proceed thereunder, and the Owner has called upon the Surety to fulfill its obligations as surety under the terms of the Performance Bond; and

WHEREAS, patent and latent defects may exist in prior work completed by the Former Contractor; and

WHEREAS, some subsidiary work may remain on items for which full or partial payment has been made; and

WHEREAS, the Surety is willing to undertake the completion of the Original Contract in accordance with the terms of the Performance Bond and this Agreement.

NOW, THEREFORE, in consideration of the agreements and undertakings hereinafter set forth, and for other good and valuable consideration, the receipt and adequacy therefore being hereby acknowledged, the Owner and Surety agree as follows:

## AGREEMENT:

RECEIVED

MAR 0 6 2006

PHILA. BOND CLAIM

1. The Surety hereby undertakes to cause the performance of the terms, covenants, and conditions of the Original Contract, including all modifications thereto, and agrees to be bound by the Original Contract. The Owner acknowledges that the Surety, by its execution of this Agreement, is acting in its capacity as the surety for the Former Contractor in making arrangements for the performance and completion of the Original Contract, and not as a completing contractor, and that the Surety is not assuming any obligations or liabilities beyond those set forth in the Bonds. In no event can the Surety's obligation or loss exceed the penal sum of the Bond. As to the completion of the Original Contract, except as otherwise provided in this Agreement, the Surety is entitled to all rights, title, and interest of the Former Contractor in and to the Original Contract in all respects as if the Surety were the original party to the Original Contract. The term "Contractor" as used in the Original Contract, shall be deemed, after the effective date of this Agreement, to refer to the Surety rather than to the Former Contractor.

2. The Owner acknowledges that the Surety will subcontract the performance of the work under the Original Contract to a completion contractor ("the Completion Contractor). The Surety agrees to repair through its designated Completion Contractor, any patent and latent defects to be found and determined to exist in already completed work, including those listed in Exhibit A to this Agreement. The Surety shall complete all the work on items containing subsidiary work for which full or partial payment has been made. The Surety's obligation to complete the work at the original bid prices shall remain in full force and effect. The Surety reserves all rights under the Original Contract and the Bonds, including any defenses due to overpayment.

3. The Surety shall satisfy the required insurance obligations under the Original Contract by providing evidence of the required insurance coverage carried by the Completion Contractor, with the Surety being named as an additional insured under the policy or policies. Work will not be allowed to commence until the Owner receives satisfactory insurance.

4. The Surety shall notify the Owner of its intent to start work in writing.

5. The Owner and the Surety agree that as of the date of this Agreement:

   (a) The authorized amount of the Original Contract, including all approved change order amounts, is the sum of $40,848,668.72(Pay Estimate #19);
   (b) The amount paid on the Original Contract is the sum of $11,128,446.85 (Pay Estimate #19);
   (c) The amount held as retainage is the sum of $445,137.87 (Pay Estimate #19);
   (d) The estimated remaining contract balance (including retainage and current contract estimate balance)is the sum of $28,076,504.57
   (e) As of the date of the execution of this Agreement, the Owner represents and warrants that, according to the records available to it, the above stated amounts are accurate. The Surety reserves the right to verify the accuracy of the above amounts.

6.  The Owner agrees that the amount of the Original Contract, including all approved change orders, minus the amount paid and any special deductions, is dedicated to the completion of the Original Contract pursuant to this Agreement. The estimated remaining contract balance is based upon projected quantities to complete the work in accordance with the Original Contract. Those quantities are subject to change and modification. Correspondingly, the remaining contract balance shall be increased or decreased to reflect the actual work completed. Nothing in this agreement shall be construed as a waiver of the Owner's rights to liquidated damages as provided for in the Original Contract. Upon resumption of the work after the default, monthly progress payments will be made to the Surety in accordance with the terms of the Original Contract as to the time, amount, and method of payment. The Owner agrees that it will not withhold funds earned under this Agreement by the Surety or the Former Contractor under the Original Contract pursuant to this Agreement for any claims, issues, or alleged problems with other Projects performed by the Former Contractor or the Surety.

7.  All costs incurred by the Owner as a result of the default, including the costs of maintaining barricades and signs, and work necessary to protect the traveling public, and any applicable liquidated damages will be deducted from the monies due the Surety for completed work. The Surety agrees that if such costs exceed the sum that would have been payable under the contract, the surety shall be liable and pay the Owner the balance of such costs in excess of the Contract price. Any such payments will be credited against the penal sum of the Bond and/or any sums that might be due or become due under the provisions of Article 8.7 of the Contract. The Owner and the Surety agree that each party is and shall be responsible for its own costs and expenses not set forth in this Agreement, that have been incurred to date, including legal, professional, survey, inventory preparation, and other fees.

8.  Insofar as the Owner has any right, title, or interest therein, the Owner agrees that the Surety and its Completion Contractor shall have the right to use, without charge, any of the equipment, materials, and appurtenances furnished or supplied by the Former Contractor that may be stored on or about the premises of the Project site or materials that may have been fabricated for use in connection with the Original Contract, whether or not presently upon the Project site.

9.  The Surety shall be represented at the Project by the Completion Contractor. Prior to the issuance of the Notice to Proceed, the Surety shall specifically authorize in writing an individual with the Completion Contractor to be its representative (the "Authorized Individual") solely for the purposes set forth in this paragraph. The Authorized Individual will represent the Surety in dealing with the Owner on day to day construction issues with respect to the Project. Payments from the Owner shall be made payable to the Surety and transmitted to the Surety at the following address, unless and until the Owner is notified in writing of any different addresses:

St. Paul Fire and Marine Insurance Company
1500 Market St., Suite 2900, West Tower
Philadelphia, PA 19109
ATTN: Mr. Tom Roberts

5/3/2002 TAKEOVER AGREEMENT          Page 3

10. The total liability of the Surety under this Agreement and the Performance Bond for the performance of the work is limited to and shall not exceed the penal sum of the Performance Bond in the amount of $40,667,675.31. All payments made by the Surety for the performance of the Original Contract shall be credited against the penal sum of the Performance Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase in the liability of the Surety under the Performance Bond.

11. In no event shall the Owner withhold any payments from the Surety because of or on account of any claims, liens, suits, or demands by and persons or entities furnishing or alleging to have furnished labor and/or materials to the Project. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions. The total liability of the Surety under the Payment Bond is limited to and shall not exceed the penal sum of the Payment Bond in the amount of $40,667,675.31. All Payment Bond payments made by the Surety shall be credited against the penal sum of the Payment Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase in the liability of the Surety under the Payment Bond.

12. This Agreement is solely for the benefit of the Owner and the Surety. The Owner and the Surety do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than the Owner and the Surety. Specifically, the Owner and the Surety acknowledge that nothing in this Agreement shall extend or increase the rights of any third-party claimants or the liabilities or obligations of the Surety under the Bonds.

13. This Agreement constitutes the whole of the understanding, discussions, and agreements by and between the Owner and the Surety. The terms and provisions of this Agreement are contractual and not mere recitals. The Owner and the Surety acknowledge that there have been no oral, written, or other agreements of any kind as a condition precedent to or to induce the execution and delivery of this Agreement. Any written or oral discussions conducted prior to the effective date of this Agreement shall not in any way vary or alter the terms of this Agreement.

14. This Agreement shall not be changed, amended, or altered in any way except in writing and executed by both the Owner and the Surety.

15. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original.

16. This Agreement shall be governed by and controlled by the laws of the State of Texas.

17. Any notices which are required to be given by the terms of this Agreement or the Bonds shall be made as follows:

As to the Owner:

Via certified mail, return receipt requested,
postage prepaid to:

Maureen Wakeland, P.E.
Area Engineer
Texas Department of Transportation
South Harris Area Office
702 FM 1959
Houston, TX 77034

As to the Surety:
Via certified mail, return receipt requested,
postage prepaid to:

St. Paul Fire and Marine Insurance Company
1500 Market St., Suite 2900, West Tower
Philadelphia, PA 19109
ATTN: Mr. Tom Roberts

18. This Agreement is effective as of the date first written above.

19. This Agreement shall be binding upon the parties and their respective successors and assigns.

20. In the event that one or more provisions of this Agreement shall be declared to be invalid, illegal, or unenforceable in any respect, unless such invalidity, illegality, or unenforceability shall be tantamount to a failure of consideration, the validity, legality, and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

21. It is understood and agreed by the Owner and the Surety that this Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted.

22. The Owner previously provided as exhibits and the parties incorporate herein by reference the following documents:
Exhibit A: List of Patent and Latent Defects
Exhibit B: Most Recent Paid Payment Application of Former Contractor.
Exhibit C: Most Recent Unpaid Payment Application of Former Contractor.
Exhibit D: The Original Contract.
Exhibit E: The Bonds.
Exhibit F: All Change Orders (including Change Order No. 20) and Time Extension Requests.
Exhibit G: All Notices of Defective Work
Exhibit H: All Claims or Notices on the Project from Subcontractors or Vendors.
Exhibit I:  A listing of all payments made by the Obligee to the former contractors, showing the payment date, the amount paid, the check number, and the payee.

The Owner agrees to provide the Surety with reasonable access and/or copies of these documents upon written request.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date indicated above, and each of the undersigned personally represent and warrant that they have the full right, power, and authority to execute this Agreement on behalf of the respective parties.

**OWNER**

Texas Department of Transportation

By: *Elizabeth S. Boswell, P.E.*

Elizabeth Boswell, P.E.
Director, Construction Section
Construction Division

**SURETY**

St. Paul Fire and Marine Insurance Company

By: *Thomas J. Roberts  2/34/06*
Thomas J. Roberts
Bond Claim Counsel





* 1 2 *

# RATIFICATION AGREEMENT

Whereas, Contractor Technology, LTD, ("Contractor"), entered into a Contract with the Texas Department of Transportation, ("Owner"), for the construction of a project known as NASA Road 1 Bypass, ("Project"); and

Whereas, Hirschfeld Steel Co., Inc., ("Supplier"), entered into a Purchase Order ("Purchase Order") with Contractor to perform work and/or supply material to the Project; and

Whereas, St. Paul Fire and Marine Insurance Company ("St. Paul"), as surety provided Performance and Payment Bond(s) guaranteeing, in accordance with their respective terms, the performance of the Contract and the payment of labor and material subcontractors and suppliers; and

Whereas, Contractor has been defaulted and/or terminated or is no longer performing under its contract with the Owner and the completion of the Contract has been, or may hereafter be, undertaken by St. Paul or a contractor selected by St. Paul ("Completion Contractor").

Now therefore, the parties hereto agree as follows:

A. The statement of the Purchase Order account as of January 31, 2006 is agreed to be as follows:

| | | | | |
|---|---|---|---|---|
| 1. | | Original Purchase Order Amount | $ | 920,480.40 |
| 2. | | Approved Change Orders | $ | 00.00 |
| 3. | (1+2) | Adjusted Purchase Order Amount | $ | 920,480.40 |
| 4. | | Value of Work Completed | $ | 914,454.40 |
| 5. | | Amount Retained | $ | 00.00 |
| 6. | | Paid to Date | $ | 646,721.00 |
| 7. | | Backcharges against Supplier | $ | 00.00 |
| 8. | | Storage Costs for delayed delivery | $ | 25,000.00 |
| 9. | (4-5-6-7+8) | **Amount Currently Due** | $ | 292,733.40 |
| 9. | (3-4-7) | Value of Work not yet Performed | $ | 6,026.00 |

B. Supplier warrants that the Amount Currently Due as set forth in Paragraph A.8. is accurate and truthful and that there are no credits or offsets arising under the Purchase Order which, if disclosed by Supplier, could reduce said amount. Further, Supplier and St. Paul acknowledge and agree that Supplier will continue to store, at no additional cost to St. Paul, all remaining supplies to be delivered to the Project by Supplier; provided however that if Supplier is required to continue storage and handling of such supplies at Supplier's facilities beyond the date of April 15, 2006, then Supplier will be entitled to additional compensation for extended storage and handling of such supplies at the rate of $5,000.00 per month or $165.00 per day, whichever is less for the applicable extended storage time after April 15, 2006.

C. Upon payment by St. Paul of the Amount Currently Due as set forth in Paragraph A.8., Supplier fully and forever releases and discharges St. Paul from any and all claims, suits and actions arising against the Payment Bond for all labor and/or materials furnished to date by Supplier, excluding any claims for additional payment based upon final actual weights of the materials furnished or earned and withheld retainage (subject to Paragraph H), and assigns and transfers any claims, liens and/or causes of actions against the Contractor, the Owner, the Project and/or the Project funds for said payment to St. Paul for the labor and/or materials furnished by Supplier that is the basis for said payment as of the date of this Agreement.

D. Upon request by St. Paul, Supplier agrees to take all actions necessary to release and discharge any and all liens, claims to lien and/or any actions it has filed or may have upon the Owner, the

Project and/or the Project funds for all labor and/or materials furnished by Supplier as of the date of this Agreement.

E.  Supplier ratifies, affirms and agrees to complete its Purchase Order in accordance with all of the terms and conditions of the Purchase Order and this Agreement, which are incorporated herein by reference, waives and rescinds any claims of breach or default under the Purchase Order arising prior the date of this Agreement, and agrees to deliver its remaining materials to the Project without any delays or disruptions, pursuant to an amended delivery schedule agreed to between Supplier and St. Paul or its assignee.

F.  Supplier warrants to St. Paul that to the extent of payments received from the Contractor and/or St. Paul, all of its subcontractors, suppliers and laborers, if any, which provided labor and/or materials to the Project as of the date of this Agreement have been paid except as noted:
_____ NONE _____
(if none, insert "None"). Supplier agrees to indemnify and save St. Paul, the Contractor and the Owner harmless from and against any and all claims, causes of actions, liability, loss, cost, expense or attorneys fees arising from a breach of this paragraph.

G.  Supplier acknowledges that the work on the Project may be performed by St. Paul or a Completion Contractor selected by St. Paul. Supplier agrees that St. Paul has the sole right, option and discretion, but not the obligation, to assign for contract administration purposes the Purchase Order to a Completion Contractor. Supplier agrees, in the event of such an administrative assignment of the Purchase Order, to cooperate, coordinate and comply with the directions of the Completion Contractor in performing any obligations remaining under the Purchase Order. The parties agree that for administrative purposes, St. Paul may choose to pay Supplier any amounts that become due under the Purchase Order, other than the Amount Currently Due shown in Paragraph A above, through the Completion Contractor; however, such administrative processing of payments shall not alter or amend the contractual relationship between Supplier and St. Paul created by this Agreement and the Purchase Order.

H.  In the event that St. Paul elects to perform the completion of the work on the Project, St. Paul agrees to pay Supplier in accordance to the terms and conditions of the Purchase Order, including earned and withheld retainage, so long as Supplier continues performing according to the terms and conditions of the Purchase Order.

I.  In the event that St. Paul elects to terminate the Purchase Order for any reason other than the Supplier's breach of the terms and conditions of the Purchase Order and/or this Agreement, St. Paul agrees to pay Supplier: i) for all additional labor and/or materials incorporated into the Project and accepted by the Owner within thirty (30) days from the effective date of termination, and ii) for all earned but unpaid retainage, which shall be paid in accordance with provisions of the Purchase Order.

This Agreement is effective this __24th__ day of __February__, 2006.

Hirshfeld Steel Company, Inc. (Supplier)                    St. Paul Fire and Marine Insurance Company

By: _Richard W. Rich_                                      By: _Thomas J Roberts_

Title: _E VP + CFO_                                        Title: _Bond Claim Counsel/Manager_

TOTAL P.03



Check Info

| | |
|---|---|
| Account: | 6·233 |
| Amount: | 292,733.40 |
| Check #: | 786602 |
| Posted Date: | 03/07/2006 |

# *Purchase Order*

## Contractor Technology, Inc.(CTI)

1302 Cordell  
Houston, Texas 77009  
281-802-0700 Fax 281-802-1888

| | |
|---|---|
| Purchase Order No. | 1 |
| Date: | 2/26/4090 |
| Project Name: | Nasa Road 1 |
| Project Number: | 16 |

**Vendor**

| | | | | | | |
|---|---|---|---|---|---|---|
| Name | Hirschfeld Steel & Supply | | | | | |
| Address | 3015 N. Bryant | | | | | |
| City | San Angelo | St | Texas | Zip | 76903 | |
| Phone | 972-541-1166 | | | | | |

**Ship To**

Name: See Attached Map  
Address  
City          St          Zip  
Phone

| Description | Quantity | Unit | Unit Price | Total Amount |
|---|---|---|---|---|
| Steel | 767,067.00 | LBS | 1.20 | 920,480.40 |
| See attached quote for details of pricing | | | | |

**Shipping Date** Per superintendent/foreman instructions

**Approval**  by _____          by _____

**Ted Labuzan**                              Title: _____
**Title: Project Manager**
**Contractor Technology, Inc.**

**Notes/Remarks**

1) 5 copies of submittals required per specifications are to be promptly prepared and delivered to CTI Submittals can take up to 30 days and promptness is required. Fabrication prior to submittal approval is at your risk.
2) Remit (2) copies of invoice
3) Provide all material safety data sheets (MSDS)
4) Ship via your trucks unless qualified otherwise
5) Order is valid when CTI is issued notice to proceed
6) Prices are firm for project contract duration
7) Items are to meet or exceed project plans and specifications
8) Items are to be delivered or prepared when required by CTI
9) Notify us immediately if P.O. is incorrect
10) Notify us immediately if shipping schedules are revised
11) Quantities, if shown, are approximate and Final Payment will be based on quantities used times unit prices shown above
12) All Federal, State, Local, and CTI Safety Rules Shall Be Strictly Adhered To
13) Fill in Item and Spec number on Transmittal Form and Provide the Proper # of Copies

 **HIRSCHFELD** STEEL CO. INC.

122 W. CARPENTER
SUITE 255
IRVING, TX 75039

(972) 541-1166
FAX (972) 541-1168

## PROPOSAL

Contractor Technology

Attn: Ted Labuzan, Patrick

Ph.  713-802-0700
Fax  713-802-1888

RE: Quotation #4024
April 6, 2004 – *Confirmation*
NASA 1 – Sarah Deel Overpass
Harris County, Texas
Project No. NH 2004(76)

We propose to furnish the following described materials for the above structure, in accordance with the conditions of the Code of Standard Practice of American Institute of Steel Construction and the following terms and conditions, including those printed on the reverse side of this sheet, which upon acceptance by you of this proposal, are agreed to and accepted by you:

| BID ITEM | DESCRIPTION | PLAN WEIGHT |
|---|---|---|
| 442 5002 | STRUCT STL – HS | 767,067 LBS. |

### THE ABOVE BID ITEM INCLUDES THE FOLLOWING:

1. Box Girder Bent Caps at Bent 5, 6, 7, 8, 9, 10, 11, 12
2. Shear Stud Connectors
3. Beveled Bearing Plates, Preformed Fabric Pads and Anchor Bolts
4. System II Primer on Exterior, Painted Interior

### THE PRICE PER POUND FOR THE ABOVE ITEMS IS $___1.20___ .

### QUALIFICATIONS:

1. Price is F.O.B. with freight allowed to point nearest the jobsite that is accessible by truck.
2. Hirschfeld Steel Company reserves the right to seek appropriate revisions to Buyer's standard form of agreement.
3. If the customer elects to have the stud connectors shop attached, the following provision shall be incorporated into the Purchase Order:
   - "Contractor hereby acknowledges and agrees that Contractor will require and ensure that all workers, including those engaged in connecting and in decking (as well as deckers in a CDZ), shall be protected from falls by conventional fall protection."

### OUR PROPOSAL IS BASED UPON THE FOLLOWING:

1. Plan Sheets Per Index of Sheets for Bridge
2. Texas Standard Specifications - 1995

*Confidential*
*April 6, 2004 – Confirmation*

Quotation #4024
Page 1 of 3



**HIRSCHFELD**
STEEL CO. INC.

122 W. CARPENTER
SUITE 255
IRVING, TX 75039

(972) 243-1165

Fax: (972) 541-1168

## PROPOSAL

**EXCLUDED ITEMS:**

1.  Finish, Field and Touch-Up Paint or Painting
2.  Grout or Grouting
3.  Flashing, Sheet Metal or Light Gauge Material
4.  Inspection or Testing Fees By Independent Lab
5.  Demolition
6.  Field Measurements or Engineering
7.  Field Erection or Unloading
8.  Reinforcing Steel, Wire Mesh and Accessories
9.  Traffic Control
10. Sales Tax
11. Payment/Performance Bond (Can be provided if required.)
12. Elastomeric Bearings
13. Expansion Joints
14. Armor Joint
15. Field Erection Bracing or Drawings for Same
16. Elastomeric Bearing Pads for Concrete Beams at Beam Bracket Seats on Box Girder (See Typical Detail –
    Sheet 600)

*PROPRIETARY AND CONFIDENTIAL INFORMATION:*

*The information contained in this written quotation is proprietary and confidential information intended for the limited use of
the recipient named above. You are hereby notified that any dissemination, distribution or communication of the pricing
information set forth above to any third parties without the prior consent of Hirschfeld Steel Co., Inc. is strictly prohibited.*

**HIRSCHFELD STEEL CO., INC.**

By _____
Cody Carlile

*ACCEPTED BY:*

**Contractor Technology**

By_____

Print Name_____

Title_____

Date_____

# Godwin | Pappas
## Langley | Ronquillo

JAMES W. HAMEL
Partner
Direct Dial:  214.939.8667
Direct Fax:  214.527.3130
jhamel@godwinpappas.com

Attorneys
A Limited Liability Partnership

DALLAS  HOUSTON

Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270-2041
214 939 4400
800 662 8393
214 760 7332 Fax

GodwinPappas.com

August 1, 2006

Hirschfield Steel & Supply
3015 No. Bryant
San Angelo, Texas 76903
*Via Certified Mail #7160 3901 9849 5641 7833*

Hirschfield Steel Co., Inc.
30 West 29th Street
San Angelo, Texas 76903
*Via Facsimile 325-653-9333 and*
*Certified Mail #7160 3901 9849 5641 7840*

Mr. Terry Salazar
Quilling Selander Cummiskey & Lownds
2001 Bryan Tower
Suite 1800
Dallas, TX 75201
*Via Facsimile 214-871-2111*

Mr. Cody Carlisle
Hirschfield Steel Co., Inc.
122 W. Carpenter, Suite 255
Irving, Texas 75039
*Via Facsimile 972-541-1168 and*
*Certified Mail #7160 3901 9849 5641 7857*

Re:  Surety:  St. Paul Fire & Marine Insurance Company (the "Surety")
      Supplier:  Hirschfield Steel Company, Inc. ("Hirschfield")
      Project:  NASA Road 1 Bypass (the "Project")

This firm represents the Surety in the above-referenced matter.  We write to make formal demand on Hirschfield that it deliver the two remaining steel girders under the Ratification Agreement, or provide the Surety with written confirmation that it will provide the two steel girders when requested by Texas Sterling by Monday, August 7, 2006.

As you are aware, Hirschfield and the Surety entered into a Ratification Agreement dated February 24, 2006.  I have attached a copy of the Ratification Agreement to this letter for your reference.  Pursuant to that agreement, Hirschfield agreed "to deliver its remaining materials to the Project without any delays or disruptions, pursuant to an amended delivery schedule agreed to between Supplier and St. Paul or its assignee."  The Purchase Order (additional copy attached) provides for the fabrication and delivery of steel girders weighing 767,067 pounds.  Pursuant to the Ratification Agreement, the Surety paid Hirschfield in full for the steel girders at issue.

Despite being paid in full under the Ratification Agreement, we now understand that Hirschfield is refusing to deliver the remaining steel girders to the Project.  The completion

Hirschfield Steel & Supply
Mr. Terry Salazar
August 1, 2006
Page 2

contractor, Texas Sterling, has informed the Surety's representative that one of the girders must be delivered to the Project within the next two weeks to keep the Project on schedule. Pursuant to the Surety's agreement with the Texas Department of Transportation for the completion of the Project, delays to the Project cost the Surety $15,000 per working day in incentives and liquidated damages. If the Project is delayed or impacted in any manner by Hirschfield's failure to deliver the steel girders when promised pursuant to the Ratification Agreement, the Surety will seek recovery of any such amounts from Hirschfield.

We understand that Hirschfield is refusing to turn over the steel girders because of demands and claims from the Trustee in the bankruptcy of Contractor Technology, Ltd. ("CTL"). Specifically, we understand that the Trustee has sued Hirschfield for alleged post-petition payments from CTL and made demand for alleged preferential payments. These claims of the Trustee have nothing to do with the Surety or the Ratification Agreement. The fact of the matter is that Hirschfield had been paid in full under the Ratification Agreement, and this condition remains unchanged. There is no excuse for Hirschfield's failure to honor the agreement it made in the Ratification Agreement.

Hirschfield's failure and refusal to deliver the steel girders as promised constitutes a breach of the Ratification Agreement. The Surety hereby provides formal notice of Hirschfield's breach and formally demands that Hirschfield's defaults be cured by either delivering the steel girders at issue or providing the Surety with written confirmation that the steel girders will be delivered when required by Texas Sterling. This must be accomplished by Monday, August 7, 2006. If Hirschfield fails to comply with this demand, we will advise the Surety to exercise its legal rights against Hirschfield, which will include extraordinary remedies available under Texas law. The Surety may also terminate the Ratification Agreement and obtain another supplier for the steel girders. As set forth above, the Surety will hold Hirschfield responsible for any and all impact, delays, and damages it suffers as a result of Hirschfield's defaults.

If you have any questions regarding this matter, please contact me at 214-939-8667.

Sincerely,

James W. Hamel

JWH/kwb
Enclosures

D1307504v1\11723.0086 LETTER

Hirschfield Steel & Supply
Mr. Terry Salazar
August 1, 2006
Page 3

cc:    Mr. Doug Melroy
        Mr. Tom Roberts
        Mr. Gary Bierhalter
        Mr. Keith Langley

# RATIFICATION AGREEMENT

Whereas, Contractor Technology, LTD, ("Contractor"), entered into a Contract with the Texas Department of Transportation, ("Owner"), for the construction of a project known as NASA Road 1 Bypass, ("Project"); and

Whereas, Hirschfeld Steel Co., Inc., ("Supplier"), entered into a Purchase Order ("Purchase Order") with Contractor to perform work and/or supply material to the Project; and

Whereas, St. Paul Fire and Marine Insurance Company ("St. Paul"), as surety provided Performance and Payment Bond(s) guaranteeing, in accordance with their respective terms, the performance of the Contract and the payment of labor and material subcontractors and suppliers; and

Whereas, Contractor has been defaulted and/or terminated or is no longer performing under its contract with the Owner and the completion of the Contract has been, or may hereafter be, undertaken by St. Paul or a contractor selected by St. Paul ("Completion Contractor").

Now therefore, the parties hereto agree as follows:

A. The statement of the Purchase Order account as of January 31, 2006 is agreed to be as follows:

| | | | | |
|---|---|---|---|---|
| 1. | | Original Purchase Order Amount | $ | 920,480.40 |
| 2. | | Approved Change Orders | $ | 00.00 |
| 3. | (1+2) | Adjusted Purchase Order Amount | $ | 920,480.40 |
| 4. | | Value of Work Completed | $ | 914,454.40 |
| 5. | | Amount Retained | $ | 00.00 |
| 6. | | Paid to Date | $ | 646,721.00 |
| 7. | | Backcharges against Supplier | $ | 00.00 |
| 8. | | Storage Costs for delayed delivery | $ | 25,000.00 |
| 9. | (4-5-6-7+8) | Amount Currently Due | $ | 292,733.40 |
| 9. | (3-4-7) | Value of Work not yet Performed | $ | 6,026.00 |

B. Supplier warrants that the Amount Currently Due as set forth in Paragraph A.8. is accurate and truthful and that there are no credits or offsets arising under the Purchase Order which, if disclosed by Supplier, could reduce said amount. Further, Supplier and St. Paul acknowledge and agree that Supplier will continue to store, at no additional cost to St. Paul, all remaining supplies to be delivered to the Project by Supplier; provided however that if Supplier is required to continue storage and handling of such supplies at Supplier's facilities beyond the date of April 15, 2006, then Supplier will be entitled to additional compensation for extended storage and handling of such supplies at the rate of $5,000.00 per month or $165.00 per day, whichever is less for the applicable extended storage time after April 15, 2006.

C. Upon payment by St. Paul of the Amount Currently Due as set forth in Paragraph A.8., Supplier fully and forever releases and discharges St. Paul from any and all claims, suits and actions arising against the Payment Bond for all labor and/or materials furnished to date by Supplier, excluding any claims for additional payment based upon final actual weights of the materials furnished or earned and withheld retainage (subject to Paragraph H), and assigns and transfers any claims, liens and/or causes of actions against the Contractor, the Owner, the Project and/or the Project funds for said payment to St. Paul for the labor and/or materials furnished by Supplier that is the basis for said payment as of the date of this Agreement.

D. Upon request by St. Paul, Supplier agrees to take all actions necessary to release and discharge any and all liens, claims to lien and/or any actions it has filed or may have upon the Owner, the

Project and/or the Project funds for all labor and/or materials furnished by Supplier as of the date of this Agreement.

E.  Supplier ratifies, affirms and agrees to complete its Purchase Order in accordance with all of the terms and conditions of the Purchase Order and this Agreement, which are incorporated herein by reference, waives and rescinds any claims of breach or default under the Purchase Order arising prior the date of this Agreement, and agrees to deliver its remaining materials to the Project without any delays or disruptions, pursuant to an amended delivery schedule agreed to between Supplier and St. Paul or its assignee.

F.  Supplier warrants to St. Paul that to the extent of payments received from the Contractor and/or St. Paul, all of its subcontractors, suppliers and laborers, if any, which provided labor and/or materials to the Project as of the date of this Agreement have been paid except as noted: _____NONE_____ (if none, insert "None"). Supplier agrees to indemnify and save St. Paul, the Contractor and the Owner harmless from and against any and all claims, causes of actions, liability, loss, cost, expense or attorneys fees arising from a breach of this paragraph.

G.  Supplier acknowledges that the work on the Project may be performed by St. Paul or a Completion Contractor selected by St. Paul. Supplier agrees that St. Paul has the sole right, option and discretion, but not the obligation, to assign for contract administration purposes the Purchase Order to a Completion Contractor. Supplier agrees, in the event of such an administrative assignment of the Purchase Order, to cooperate, coordinate and comply with the directions of the Completion Contractor in performing any obligations remaining under the Purchase Order. The parties agree that for administrative purposes, St. Paul may choose to pay Supplier any amounts that become due under the Purchase Order, other than the Amount Currently Due shown in Paragraph A above, through the Completion Contractor; however, such administrative processing of payments shall not alter or amend the contractual relationship between Supplier and St. Paul created by this Agreement and the Purchase Order.

H.  In the event that St. Paul elects to perform the completion of the work on the Project, St. Paul agrees to pay Supplier in accordance to the terms and conditions of the Purchase Order, including earned and withheld retainage, so long as Supplier continues performing according to the terms and conditions of the Purchase Order.

I.  In the event that St. Paul elects to terminate the Purchase Order for any reason other than the Supplier's breach of the terms and conditions of the Purchase Order and/or this Agreement, St. Paul agrees to pay Supplier: i) for all additional labor and/or materials incorporated into the Project and accepted by the Owner within thirty (30) days from the effective date of termination, and ii) for all earned but unpaid retainage, which shall be paid in accordance with provisions of the Purchase Order.

This Agreement is effective this _24th_ day of _February_, 2006.

Hirshfeld Steel Company, Inc. (Supplier)

By: _Richard W. Rich_

Title: _E VP & CFO_

St. Paul Fire and Marine Insurance Company

By: _Thomas J Roberts_

Title: _Bond Claim Counsel / Manager_

# *Purchase Order*

## Contractor Technology, Inc.(CTI)

1302 Cordell
Houston, Texas 77009
281-802-0700 Fax 281-802-1888

| | |
|---|---|
| Purchase Order No. | 1 |
| Date: | 2/26/4090 |
| Project Name: | Nasa Road 1 |
| Project Number: | 16 |

**Vendor**

Name   Hirschfeld Steel & Supply
Address 3015 N. Bryant
City   San Angelo   St   Texas   Zip   76903
Phone  972-541-1166

**Ship To**

Name: See Attached Map
Address
City              St              Zip
Phone

| Description | Quantity | Unit | Unit Price | Total Amount |
|---|---|---|---|---|
| Steel | 767,067.00 | LBS | 1.20 | 920,480.40 |
| See attached quote for details of pricing | | | | |

Shipping Date Per superintendent/foreman instructions

Approval    by _____          by _____
             Ted Labuzan
             Title: Project Manager                Title: _____
             Contractor Technology, Inc.

**Notes/Remarks**

1) 5  copies of submittals required per specifications are to be promptly prepared and delivered to CTI
   Submittals can take up to 30 days and promptness is required. Fabrication prior to submittal approval
   is at your risk.
2) Remit (2) copies of invoice
3) Provide all  material safety data sheets (MSDS)
4) Ship via  your trucks unless qualified otherwise
5) Order is valid when CTI is issued notice to proceed
6) Prices are firm for project contract duration
7) Items are to meet or exceed project plans and specifications
8) Items are to be delivered or prepared when required by CTI
9) Notify us immediately if P.O. is incorrect
10) Notify us immediately if shipping schedules are revised
11) Quantities, if shown, are approximate and Final Payment will be based on quantities used
    times unit prices shown above
12) All Federal, State, Local, and CTI Safety Rules Shall Be Strictly Adhered To
13) Fill in item and Spec number on Transmittal Form and Provide the Proper # of Copies



**HIRSCHFELD**
STEEL CO. INC.

122 W. CARPENTER
SUITE 255
IRVING, TX 75039

(972) 541-1165

FAX (972) 541-1361

---

| PROPOSAL |

Contractor Technology

Attn: Ted Labuzan, Patrick

Ph.   713-802-0700
Fax   713-802-1888

RE:  Quotation #4024
April 6, 2004 – *Confirmation*
NASA 1 – Sarah Deel Overpass
Harris County, Texas
Project No. NH 2004(76)

We propose to furnish the following described materials for the above structure, in accordance with the conditions of the Code of Standard Practice of American Institute of Steel Construction and the following terms and conditions, including those printed on the reverse side of this sheet, which upon acceptance by you of this proposal, are agreed to and accepted by you.

| BID ITEM | DESCRIPTION | PLAN WEIGHT |
|----------|-------------|-------------|
| 442 5002 | STRUCT STL – HS | 767,067 LBS. |

## THE ABOVE BID ITEM INCLUDES THE FOLLOWING:

1.   Box Girder Bent Caps at Bent 5, 6, 7, 8, 9, 10, 11, 12
2.   Shear Stud Connectors
3.   Beveled Bearing Plates, Preformed Fabric Pads and Anchor Bolts
4.   System II Primer on Exterior, Painted Interior

## THE PRICE PER POUND FOR THE ABOVE ITEMS IS $___1.20___.

## QUALIFICATIONS:

1.   Price is F.O.B. with freight allowed to point nearest the jobsite that is accessible by truck.
2.   Hirschfeld Steel Company reserves the right to seek appropriate revisions to Buyer's standard form of agreement.
3.   If the customer elects to have the stud connectors shop attached, the following provision shall be incorporated into the Purchase Order:
     ● "Contractor hereby acknowledges and agrees that Contractor will require and ensure that all workers, including those engaged in connecting and in decking (as well as deckers in a CDZ), shall be protected from falls by conventional fall protection."

## OUR PROPOSAL IS BASED UPON THE FOLLOWING:

1.   Plan Sheets Per Index of Sheets for Bridge
2.   Texas Standard Specifications - 1995



122 W. CARPENTER
SUITE 255
IRVING, TX 75089

(972) 541-1166

FAX: (972) 541-1168

PROPOSAL

**EXCLUDED ITEMS:**

1. Finish, Field and Touch-Up Paint or Painting
2. Grout or Grouting
3. Flashing, Sheet Metal or Light Gauge Material
4. Inspection or Testing Fees By Independent Lab
5. Demolition
6. Field Measurements or Engineering
7. Field Erection or Unloading
8. Reinforcing Steel, Wire Mesh and Accessories
9. Traffic Control
10. Sales Tax
11. Payment/Performance Bond (Can be provided if required.)
12. Elastomeric Bearings
13. Expansion Joints
14. Armor Joint
15. Field Erection Bracing or Drawings for Same
16. Elastomeric Bearing Pads for Concrete Beams at Beam Bracket Seats on Box Girder (See Typical Detail – Sheet 600)

**PROPRIETARY AND CONFIDENTIAL INFORMATION:**

The information contained in this written quotation is proprietary and confidential information intended for the limited use of the recipient named above. You are hereby notified that any dissemination, distribution or communication of the pricing information set forth above to any third parties without the prior consent of Hirschfeld Steel Co., Inc., is strictly prohibited.

HIRSCHFELD STEEL CO., INC.

By _____
Cody Carlisle

**ACCEPTED BY:**

Contractor Technology

By _____

Print Name _____

Title _____

Date _____