IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| CONTRACTOR TECHNOLOGY, LTD | § | CASE NO: 05-37623 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |
| | § | |
| ST. PAUL FIRE AND MARINE | § | |
| INSURANCE COMPANY | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3528 |
| | § | |
| HIRSCHFELD STEEL CO. INC. | § | |
| Defendant(s) | § | |

## **MEMORANDUM OPINION**

For the reasons set forth below St. Paul's motion for summary judgment is granted in part. Hirschfeld Steel's motion for summary judgment is denied.

*Background*

On May 13, 2005, Contractor Technology, Ltd. ("Debtor") filed a petition for chapter 11 bankruptcy relief. The case was converted to a case under chapter 7 on June 23, 2005. Debtor was the prime contractor on various public works projects in Texas. To complete construction of the projects, Debtor entered into a purchase order with Hirschfeld Steel Co., Inc ("Hirschfeld") to supply necessary labor and materials. Specifically, Hirschfeld was to fabricate structured steel, or girders, for the project referred to as NASA – 1 ("NASA"). As required under Chapter 2253 of the Texas Government Code (the "McGregor Act"), Debtor posted payment bonds with St. Paul Fire and Marine Insurance Company ("St. Paul") to provide security for payment to suppliers and subcontractors. *See* TEX. GOV'T CODE ANN § 2253.021 (Vernon Supp. 2004).

On May 12, 2005, Hirschfeld received payment of $268,073.00 from Debtor on invoice no. 313385. Trustee instituted an avoidance action for this amount plus interest on May 9, 2006.

1

On December 15, 2006, $282,361.29 was returned to Debtor's estate pursuant to the Court's July 27, 2006 Order and supplemental September 5, 2006 Order Granting Summary Judgment to Trustee finding that the payment constituted an unauthorized post-petition transfer.

Prior to Trustee's avoidance action, Hirschfeld and St. Paul, on February 24, 2006, entered into a Ratification Agreement whereby St. Paul undertook completion of the NASA project and agreed to pay Hirschfeld the remaining amount due under the original purchase order relating to the NASA project.  St. Paul paid Hirschfeld $292,733.40 pursuant to the Ratification Agreement. This amount represented the balance then remaining on the original purchase order.

After undertaking completion of the NASA project, St. Paul sued Hirschfeld in Texas state court in Harris County, Texas, alleging that Hirschfeld refused to deliver certain specially fabricated material necessary for the NASA project.  The suit was removed to this Court on August 14, 2006.  Hirschfeld answered and filed a counterclaim alleging, *inter alia*, St. Paul was liable to Hirschfeld for the amount avoided by Trustee and for failure to compensate Hirschfeld for the storage and handling of specific steel girders.  Hirschfeld filed a motion for summary judgment requesting the same.  St. Paul filed a response and cross-motion seeking to dismiss Hirschfeld's claims and requesting attorney's fees.

*Summary Judgment Standard*

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).  Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party.  *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on

whether the movant bears the ultimate burden of proof at trial. At all times, a court views the facts in the light most favorable to the non-moving party. *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006). However, to weigh evidence would result in a credibility determination which is not part of the summary judgment analysis. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006). A court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact. *Warfield*, 436 F.3d at 557. The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position. *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

If the movant does not bear the burden of proof, the movant must show the absence of sufficient evidence to support an essential element of the opposing party's claim. *Id.; see also Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005); *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). The movant may seek summary judgment if insufficient evidence has emerged from discovery to support the non-moving party's claims. 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2727 (3d ed. 1998). At this time the non-moving party must respond with sufficient evidence to support the challenged element of its case or present evidence to raise a material issue of fact. *Id.; Celotex Corp. v.*

3

*Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005). Ultimately, the motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim. *See Condrey*, 431 F.3d at 197.

*The Avoided Payment*

The dispute over whether Hirschfeld is entitled to reimbursement from St. Paul for the avoided payment rests on the Ratification Agreement. The Agreement provides that the amount currently due under the original purchase order ("Purchase Order") was $292,733.40. This number was derived in Paragraph A of the Ratification Agreement as follows:

| | | |
|---|---|---|
| 1 | Original Purchase Order Amount | $920,480.40 |
| 2 | Approved Change Order | $0.00 |
| 3 (1+2) | Adjusted Purchase Order Amount | $920,480.40 |
| 4 | Value of Work Completed | $914,454.40 |
| 5 | Amount Retained | $0.00 |
| 6 | Paid to Date | $646,721.00 |
| 7 | Backcharges against Supplier | $0.00 |
| 8 | Storage Costs for delayed delivery | $25,000.00 |
| 9 (4-5-6-7+8) | **Amount Currently Due** | **$292,733.40** |
| 9 (3-4-7) | Value of Work not yet Performed | $6,026.00 |

Paragraph C of the Ratification Agreement provides that:

> Upon payment by St. Paul of the Amount Currently Due as set forth in Paragraph A.8.[1], [Hirschfeld] fully and forever releases and discharges St. Paul from any and all claims, suits and actions arising against the Payment Bond for all labor and/or materials furnished to date by Supplier. . .

Paragraph H of the Ratification states that ". . . St Paul agrees to pay [Hirschfeld] in accordance to the terms and conditions of the Purchase Order. . ."

The dispute arises over line 6 in paragraph A. The amount listed as Paid to Date at the

---

[1] The Court notes that the Amount Currently Due is stated in A.9, not A.8. The mistake is also made in paragraph B and C of the Ratification Agreement. This is clearly a mistake of both parties. Each time the Agreement references paragraph A.8 it is stated as "the Amount Currently Due as set forth in Paragraph A.8." The mistake does not have a material effect on the agreed exchange of performances. Accordingly, such an error, under these circumstances, is irrelevant. *See* RESTATEMENT (SECOND) OF CONTRACTS § 155, cmt. 1, illus. 1 (1981).

4

time the Agreement was signed, on February 24, 2006, was accurate. However, this amount includes the amount which was returned as an unauthorized post-petition transfer to Trustee pursuant to the September 2006 Order granting summary judgment in favor of Trustee.

St. Paul asserts that after it paid Hirschfeld $292,733.40, under paragraph C, it was released from all other claims Hirschfeld may have. Hirschfeld argues that notwithstanding the release, it is entitled to payment from St. Paul for the amounts returned to Trustee. Hirschfeld makes three arguments: (1) the McGregor act requires payment and any avoidance of a prior paid amount results in rendering such prior payment a nullity; (2) the theory of mutual mistake in entering into the Ratification Agreement; and (3) even if St. Paul is released under the Payment Bonds, St. Paul remains liable under the Purchase Order itself.

The Court rejects Hirschfeld's first argument. While the Court has previously held that an avoided transfer may be treated as though it never occurred, the release is clear. A release agreement is regarded as a contract and acts as a "complete bar to any action based on matters covered in the release." *Tamez v. Sw Motor Transp., Inc.*, 155 S.W.3d 564, 568 (Tex.App.—San Antonio 2004, no pet.) (citing *McMahan v. Greenwood*, 108 S.W.3d 467 (Tex.App.—Houston [14th Dist.] 2003, reh'g overruled)). Any claim under the Payment Bond is released. Indeed, Hirschfeld recognizes the release applied to the Payment Bond in its response to St. Paul's cross-motion for summary judgment. Rsp. to Cross-Mo. for Sum. J. ¶ 13 ("[T]he Release Provision only grants a release to St. Paul for claims against the Payment Bond."). Hirschfeld could recover under this first theory only if the release was found to be non-binding. Hirschfeld makes such an assertion in its second argument that mistake of both parties make the Ratification Agreement voidable or subject to reformation.

For Hirschfeld to avoid the release on the basis of mutual mistake, Hirschfeld has the burden to show "what the parties' true agreement was and that the instrument incorrectly reflects

5

that agreement because of a mutual mistake." *Beyers v. Roberts*, 199 S.W.3d 354 (Tex. App.—Houston [1 Dist.] 2006, pet. denied) (citing *Estes v. Republic Nat'l Bank of Dallas,* 462 S.W.2d 273, 275 (Tex.1970)).  Hirschfeld must demonstrate "(1) a mistake of fact, (2) held mutually by the parties, and (3) which materially affects the agreed-upon exchange." *Wallerstein v. Spirt*, 8 S.W.3d 774, 780 (Tex.App—Austin 1999, no pet.) (quoting *de Monet v. PERA*, 877 S.W.2d 352, 357 (Tex.App.—Dallas 1994, no writ).  "To avoid the contract . . . the parties must have acted under the same misunderstanding of the same material fact." *de Monet*, 877 S.W.2d at 357 (citing *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 784 (Tex.App.—Dallas 1990, writ denied)).

A "material effect is one that involves the subject matter of the contract and the substance thereof." *Id.* (citing *Durham v. Uvalda Rock Asphalt Co.*, 599 S.W.2d 866, 870 (Tex.Civ.App.—San Antonio 1980, no writ))).  The Court should "consider the contract itself, the knowledge of the parties at the time of the contract, the extent of negotiations and discussions regarding the alleged mutual mistake, and the amount of consideration paid." *Id.* (citing *Williams v. Glash*, 789 S.W.2d, 261, 264 (Tex. 1990)).

In support of its argument, Hirschfeld asserts the following:

> At the time the Ratification Agreement was executed on February 24, 2006, both parties had reason to believe that the Paid to Date figures of $646,721.00 was accurate.  Based on that assumption of fact, the parties negotiated and agreed upon the remaining terms of the Ratification Agreement.

Rsp to St. Paul's Cross Mo. for Sum. J. ¶ 23.  St. Paul, however, points to Hirschfeld's admission that it received a letter from Trustee in September 2005, seeking a return of funds paid to Hirschfeld as a post petition transfer pursuant to 11 U.S.C. § 549.  While Hirschfeld acknowledges receipt of the Trustee's letter, Hirschfeld asserts it believed Trustee had no legitimate claim to seek recovery.

In Texas, "in the absence of fraud, settlement agreements and releases are a complete bar

6

to any later action based on matters included therein." *White v. Grinfas*, 809 F.2d 1157, 1160 (5th Cir. 1987). While a mutual mistake may excuse performance or allow reformation of a contract, "a person who intentionally assumes the risk of unknown facts cannot escape a bargain by alleging mistake or misunderstanding." *Geodyne Energy Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 491 (Tex. 2005) (citing *Glash*, 789 S.W.2d at 264).

By its own admission, Hirschfeld negotiated and agreed to the terms of the Ratification Agreement even though it had received a letter from Trustee demanding return of $268,073.00. Hirschfeld argues that, as stated in the Restatement Second of Contracts, a mistaken party's fault in failing to discover facts before making the contract does not bar him from avoidance or reformation unless his fault is due to failure to act in good faith and in accordance with reasonable standards of fair dealing. RESTATEMENT (SECOND) OF CONTRACTS § 157 (1981). The Court finds this theory is inapplicable. Hirschfeld did not fail to discover facts. When Hirschfeld signed the release, it was well aware of and had ample time to evaluate the possible effects of Trustee's pending demand letter.

The Ratification Agreement states that "[Hirschfeld] warrants that the Amount Currently Due . . . is accurate and truthful and that there are no credits or offsets arising under the Purchase Order which . . . could reduce said amount." The next paragraph states "[u]pon payment by St. Paul of the Amount Currently Due . . . [Hirschfeld] fully and forever releases and discharges St. Paul from any and all claims, suits and actions arising against the Payment Bond. . ." By signing the Agreement, the parties were accepting that the Amount Currently Due was a definitive amount. Hirschfeld was represented by counsel and knew Trustee had demanded return of $268,073.00 yet signed the document based on its own belief that it would not have to return the funds. Hirschfeld was intentionally assuming the risk that Trustee may recover. *See Geodyne*

*Energy Income Prod. P'ship I-E*, 161 S.W.3d at 491. This is not a mutual mistake.[2] The Court will not void or reform the release on the basis of mutual mistake.[3]

Hirschfeld's third argument is that even if St. Paul is released under the Payment Bonds, St. Paul remains liable under the Purchase Order itself. Because paragraph H makes St. Paul liable on the Purchase Order, Hirschfeld asserts it is entitled to seek full payment notwithstanding the release relating to the Payment Bond.

Hirschfeld requests the Court consider that the primary purpose of the contract was to pay under the original Purchase Order. The Court agrees with Hirschfeld's assertion in that it is to "read all parts of a contract together to ascertain the agreement of the parties" and "to give effect to the written expression of the parties' intent." *Furbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (citing *Ideal Lease Serv., Inc. v. Amoco Prod. Co.,* 662 S.W.2d 951, 953 (Tex.1983); *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex.1965). If the Court accepts Hirschfeld's argument, the parties' intent was to pay Hirschfeld under the Purchase Order in an amount that may possibly differ than that defined as Amount Currently Due derived from the statement of Purchase Order. Hirschfeld, however, has not provided evidence that this was the parties' intention.

"No one phrase, sentence, or section [of a contract] should be isolated from its setting and

---

[2] This situation is analogous to an illustration in the Restatement Second of Contracts § 152:

> A has a claim against B for B's admitted negligence, which appears to have caused personal injuries to A's back in an amount fairly valued at $10,000, *although the parties are aware that A may require further treatment*. In consideration of B's payment of $15,000, A executes a release of "all claims for injury to person or property" that he may have against B. A later incurs additional expenses of $20,000 in connection with his back, which was injured more seriously than he had believed. The release is not voidable by A.

RESTATEMENT (SECOND) OF CONTRACTS § 152, cmt. f, illus. 13 (1981) (emphasis added). While there is no evidence that St. Paul knew of the demand letter at the time of the Release, Hirschfeld has admitted knowledge of the letter. Accordingly, Hirschfeld agreed to a valuation of its claim for $292,733.40 even though Hirschfeld was aware it may have to remit payment to Trustee.

[3] St. Paul has asserted that Hirschfeld has not properly pled reformation. Based on the Court's findings relating to mutual mistake, this argument is moot.

8

considered apart from the other provisions." *Furbau*, 876 S.W.2d at 134 (quoting *Guardian Trust Co. v. Bauereisen,* 121 S.W.2d 579, 583 (Tex. 1938)). In *Furbau,* the Court noted that in a suit involving coverage relating to an insurance policy, "when a contract provision makes a general statement of coverage, and another provision specifically states the time limit for such coverage, the more specific provision will control." *Id.* at 133-34 (citing 3 ARTHUR L. CORBIN, CONTRACTS §§ 545-54 (1960)).

The Purchase Order and the amount due thereunder are defined in the Ratification Agreement. Paragraph A states "[t]he statement of Purchase Order account as of January 31, 2006 is agreed to be as follows . . ." The "Amount Currently Due" is then defined and warranted by Hirschfeld to be accurate.

The Ratification Agreement provides generally that Hirschfeld is to be paid under the Purchase Order. The amount due under the Purchase Order is specifically defined. Hirschfeld is essentially seeking to be bound by Paragraph H requiring payment on the Purchase Order, but not bound by the definition of the amount due under the Purchase Order. The Court will not isolate Paragraph H and read it without considering the definition of and release resulting from payment of Amount Currently Due as stated in Paragraph A. Hirschfeld's motion for summary judgment as to the avoided claim is denied. St. Paul's motion for summary judgment as to the avoided claim is granted.

*Storage and Handling of the Steel Girders*

Hirschfeld's motion for summary judgment also requests compensation for storage and handling of certain steel girders.[4] St. Paul argues Hirschfeld is not entitled to storage and freight

---

[4] When this suit was initially filed, St. Paul sued Hirschfeld alleging that Hirschfeld was refusing to deliver two certain girders. St. Paul requested issuance of a writ of sequestration, specific performance and attorney's fees and alleged breach of contract and conversion. Hirschfeld responded with a request for declaratory judgment under the payment bonds and ratification agreement and asserted a claim under the ratification agreement for the storage and handling costs, payment of its avoided claim and attorney fees.

charges because the storage and handling charges were incurred because of Hirschfeld's refusal to deliver the materials at the originally requested time. St. Paul argues this claim is also barred by the release and requests the Court dismiss this claim. Paragraph B of the Ratification Agreement states:

> [I]f [Hirschfeld] is required to continue storage and handling of such supplies at [their] facilities beyond the date of April 15, 2006, then [Hirschfeld] will be entitled to additional compensation for extended storage and handling of such supplies at the rate of $5,000.00 per month or $165 per day, whichever is less for the applicable extended storage time after April 15, 2006.

The period for which Hirschfeld requests compensation is from April 15, 2006 through September 29, 2006. Hirschfeld argues it is entitled to $26,895.00 in storage fees and $6,026.00 for freight transportation costs.

Hirschfeld denies that it delayed delivery and states that it communicated with St. Paul and with the replacement contractor to determine the delivery date. Hirschfeld has provided a copy of a Schedule Update which allegedly shows that the girders were not scheduled for installation any earlier than September 22, 2006 and September 26, 2006. As a matter of summary judgment, the Scheduling Order is insufficient to show when the materials were needed, requested or delivered. Hirschfeld's motion for summary judgment as to storage and delivery of the girders is denied.

Hirschfeld has, however, presented sufficient evidence to raise issues as to the material facts of St. Paul's assertions. Accordingly, St. Paul's motion for summary judgment as to storage and delivery of the girders is denied.

*Attorney's Fees*

Both parties have requested attorney's fees. It is well settled that attorney's fees are permissible only if authorized by statute or by contract between the parties. *E.g. Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 593 (Tex. 1996).

Hirschfeld requests attorney's fees under the Texas Government Code § 2253.073(b). Section 2253.073(b) authorizes a suit for reasonable attorney's fees as they relate to suits on payment bonds. The statute specifically authorizes that suits may occur "on the payment bond." Tex. Gov't Code § 2253.073(a). As for Hirschfeld's claims, the Court has denied Hirschfeld's motion for summary judgment for recovery under the payment bond. This argument is now moot.

St. Paul argues it is entitled to attorney's fees under Texas Government code § 2253.074. Section 2253.074 states that "a court may award costs and reasonable attorney fees that are equitable in a proceeding to enforce a claim on a payment bond or to declare that any part of a claim is invalid." TEX. GOV'T CODE § 2253.074. This award is not mandatory, but within the trial court's discretion. *See. S.A. Maxwell Co. v. R.C. Small & Assoc., Inc.*, 873 S.W.2d 447, 456 (Tex.App.—Dallas 1994, writ denied) (construing § 2253.074's predecessor, Article 5160(H) of the McGregor Act which includes substantially similar language).

The Court will consider whether to award attorney's fees only after a decision is issued with respect to the storage and handling matter. The Court will conduct a trial on all remaining issues on May 31, 2007 at 1:30 p.m.

Signed at Houston, Texas, on April 16, 2007.

MARVIN ISGUR
United States Bankruptcy Judge